# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **ROBERT LEE RHOE, II,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-17-3757 |
| | * |
| **KUNZ,** *et al.*, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Robert Lee Rhoe, II brings this *pro se* action against various Maryland judges, state child support attorneys, and state entities alleging that Defendants have violated several federal laws and the U.S. Constitution during the course of an ongoing paternity proceeding.[1] ECF No. 1. Presently pending before the Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' Motion to Dismiss will be granted.

## I.   BACKGROUND[2]

Enma Q. Perez gave birth to a child in July 2009. ECF No. 1-5 at 4.[3] On January 21, 2016, the Montgomery Office of Child Support Enforcement (MCOCSE) filed a paternity

---

[1] Defendants are Judge John M. Maloney, Judge Joseph M. Quirk, Judge John W. Debelius, III, Judge Debra L. Dwyer, Special Magistrate Keith J. Rosa, Esq., (collectively the "Judges"), the Circuit Court for Montgomery County, Maryland (the "Circuit Court"), Christopher J. Kunz, Esq., Amy Fusting, Esq., Rina M. Erhart, Esq., and the Montgomery Office of Child Support Enforcement (MCOCSE) (collectively the "State Defendants").

[2] Unless otherwise stated, these facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true. The Court may also take judicial notice of matters of public record and consider documents attached to the Complaint or Motion to Dismiss, to the extent that they are integral to the Complaint and authentic. *See Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 n.4 (4th Cir. 2004) (taking judicial notice of published stock prices when considering a motion to dismiss).

1

complaint against Mr. Rhoe in the Circuit Court for Montgomery County, Maryland (the "Circuit Court") regarding the minor child. ECF No. 1 ¶ 4. Attorneys Christopher Kunz, Amy Fusting, and Rina Erhart—Defendants and employees of the Maryland Attorney General's office—all served as counsel for MCOCSE at various stages of the paternity proceedings. ECF No. 1 ¶¶ 10, 13. Plaintiff alleges that MCOCSE filed the paternity complaint in bad faith. ECF No. 1 ¶ 4. Apparently in support of this position, Plaintiff asserts that Enma Perez is "not legally domiciled" in Maryland and that MCOCSE failed to produce "written representations" made by Ms. Perez about Plaintiff's paternity status. *See e.g.*, ECF No. 1 ¶ 16. Throughout the discovery process and the ongoing proceedings, MCOCSE has raised relevance objections to Plaintiff's interest in Ms. Perez's legal status in the United States. *Id.*; ECF No. 1 ¶ 16.

Plaintiff further alleges that the MCOCSE Defendants missed discovery deadlines and/or failed to comply with discovery requests. ECF No. 1 ¶ 13. Specifically, he points out that MCOCSE's discovery responses were signed by Ms. Perez and MCOCSE and Ms. Perez made certain objections. ECF No. 1 ¶¶ 13–18.

On May 18, 2016, Defendant Special Magistrate Keith J. Rosa presided over a hearing and ordered Mr. Rhoe to submit to genetic testing to determine if he was the father of the minor child. ECF No. 1 ¶ 27. Maryland law requires that "on the motion of the Administration, a party to the proceeding, or on its own motion, the court shall order the mother, child, and alleged father to submit to blood or genetic tests to determine whether the alleged father can be excluded as being the father of the child. Md. Code Ann., Fam. Law § 5-1029. At the hearing, Plaintiff argued that MCOCSE's complaint should be dismissed as a discovery sanction and he should not be required to submit to a paternity test because he cannot be forced to present evidence against

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

himself. ECF No. 1 ¶ 22; ECF No. 1-18 at 8. Plaintiff alleges that by following § 5-1029's mandate, Defendant Rosa conspired with MCOCSE to help the agency obtain evidence. ECF No. ¶ 25.

On June 1, 2016, Defendant Judge John M. Maloney signed Defendant Rosa's order requiring Mr. Rhoe to submit to genetic testing. ECF No. 1 ¶ 29. Mr. Rhoe then filed two interlocutory appeals to the Maryland Court of Special Appeals, arising out of Judge Maloney's order requiring Mr. Rhoe to submit to genetic testing and Judge Maloney's order denying Mr. Rhoe's request for sanctions for alleged discovery violations. ECF No. 1 ¶ 30–31. Although the trial court proceedings were not stayed while his interlocutory appeals pended, Mr. Rhoe refused to submit to genetic testing and failed to appear at subsequent hearings. ECF No. 1 at 33–34; ECF No. 12-2 at 12.

On July 25, 2016, MCOCSE filed a petition for contempt against Mr. Rhoe based upon his failure to submit to genetic testing. ECF No. 12-2 (certified docket entries) at 12. The hearing on contempt was postponed multiple times over the course of the next year while MCOCSE attempted to serve Mr. Rhoe. *Id.* at 12, 14, 16. MCOCSE eventually served Mr. Rhoe with the contempt complaint. *Id.* at 16. Mr. Rhoe filed a motion to quash the contempt petition, which Defendant Judge Joseph M. Quick denied. *Id.* at 17. The Office of the Public Defender then entered its appearance on behalf of Mr. Rhoe. *Id.* Plaintiff alleges that the MCOCSE Defendants violated his constitutional due process rights by filing their contempt petition and Defendant Quick violated those rights by granting the petition. ECF No. 1 ¶ 37.

On July 21, 2017, the Circuit Court held a hearing on the contempt petition. ECF No. 12-2 at 17; ECF No. 1-24. Plaintiff's then-counsel appeared, but Plaintiff failed to appear, instead sending the Circuit Court a letter indicating his belief that he could not be held in contempt. ECF

3

No. 12-2 at 17. As a result of Plaintiff's failure to appear, Defendant Judge Debra L. Dwyer issued a body attachment for Mr. Rhoe. ECF No. 1-24 at 5.

On October 24, 2017, the Montgomery County Police arrested Mr. Rhoe. ECF No. 1 ¶ 41. The Circuit Court held a bond review hearing at which Mr. Rhoe was represented by counsel. ECF No. 1 ¶ 42. At the hearing, Mr. Rhoe was released and a new court date for the petition for contempt was scheduled for December 1, 2017. ECF No. 12-2 at 19. At the rescheduled contempt hearing, Plaintiff argued that he could not be held in contempt by the Circuit Court because he had appeals pending and requested a stay of the trial court proceedings. ECF No. 1 ¶ 46. To determine whether a stay was appropriate, Defendant Judge Dwyer requested that the parties provide copies of their appellate briefs and allow for a brief recess so that she could review Plaintiff's interlocutory appeals. *Id.* The parties did so, and after reviewing the appellate briefs, Defendant Dwyer "hypothesized that Plaintiff would not prevail in his Appeal" and denied Plaintiff's motion to stay on this basis. ECF No. 1 ¶ 47. Defendant Judge Dwyer then found Mr. Rhoe in contempt and ordered that he purge the contempt by submitting to genetic testing by December 21, 2017. ECF No. 12-2 at 20. Plaintiff alleges that Defendant Dwyer's decision unconstitutionally interfered with his appeals. ECF No. 1 ¶ 47. The Maryland Court of Special Appeals later dismissed the interlocutory appeals as premature. ECF No. 12-4.

On December 20, 2017, Plaintiff filed the instant Complaint and requested an injunction against the Circuit Court. ECF No. 1. Although Plaintiff did not explicitly state whether he sued Defendants in their official or individual capacity, he served them at their employment addresses and the Complaint addresses actions taken by Defendants in their official capacities. ECF No. 1 at 1–3. After filing his federal lawsuit, Mr. Rhoe complied with the Circuit Court's contempt order and submitted to genetic testing. ECF No. 12-2 at 21. The Circuit Court then held a child

support hearing regarding paternity on March 30, 2018. ECF No. 12-2 at 26. At Ms. Perez's request, the MCOCSE Defendants withdrew their request for child support and focused solely on establishing paternity. ECF No. 15-2 at 8–9. The Circuit Court established that Mr. Rhoe is the father of the minor child. *Id.* Mr. Rhoe noticed a timely appeal of that order to the Maryland Court of Special Appeals, which according to the Complaint is currently pending. ECF No. 1 ¶ 5.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject-matter jurisdiction. Plaintiff has the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants also move to dismiss the Complaint pursuant to Rule 12(b)(6), asserting that it fails to state any claim upon which relief can be granted. To state a claim that survives a Rule 12(b)(6) motion, a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to

5

survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80. When performing this inquiry, the Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

## III. DISCUSSION

### A. Abstention

*Younger* abstention requires a federal court not to interfere in state proceedings if there is "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005). These circumstances exist here. First, the Maryland paternity proceeding—out of which Plaintiff's Complaint arises— is ongoing according to the Complaint and was instituted in January 2016, almost two years before Plaintiff filed his federal suit. ECF No. 1 ¶ 4–5.

6

Second, the proceeding implicates vital state interests: the State of Maryland has an important stake in ensuring that children residing within its borders receive their basic needs through parental support. *See Kennedy v. Kennedy,* 55 Md. App. 299, 309–310 (1983) (citing *Townsend v. Townsend,* 205 Md. 591, 596 (1954)) ("In this paternalistic role, the State imposes the obligation upon the parents to maintain, care for and protect their children" and the State may regulate "whenever necessary, and virtually without limitation when children's welfare is at stake."). Reading Plaintiff's papers generously, Mr. Rhoe argues that MCOCSE withdrew its request for child support, casting doubt on whether it ever had a vital interest in bringing the paternity complaint. ECF No. 15 at 2. However, this argument is unpersuasive. MCOCSE did not waive Ms. Perez's right to seek child support at another time and proving parentage is the first step that MCOCSE must take to impose obligations on parents to care for and protect their children. ECF No. 15-2 at 12.

Additionally, the Maryland proceedings provide Plaintiff with an adequate opportunity to raise the constitutional claims advanced in this lawsuit. In fact, Plaintiff has advanced many of the same assertions raised here as arguments or defenses in the paternity proceedings. *See e.g.*, ECF No. 1-18 at 15 ("My due process of law has been violated" and "You're getting evidence from me . . . that I don't want to give and I don't have to give"); ECF No. 12-2 at 17 (indicating to the Circuit Court that Plaintiff did not believe he could be held in contempt); ECF No. 1-25 at 21 ("I had to make a decision between my freedom and my due process of law"); ECF No. 15-2 at 29 (explaining to the Circuit Court why he believed Ms. Perez's legal status in the United States relevant as a defense). To the extent that Plaintiff believes his constitutional rights have been violated by Defendants alleged failure to comply with discovery, ECF No. 1 ¶ 13, he can raise those concerns within the Maryland proceeding.

Plaintiff's argument that *Younger* abstention should not apply because "Defendants prosecuted the Plaintiff in bad faith; are part of a pattern of harassment against the Plaintiff and perhaps thousands of other alleged fathers; and the law being enforced by the Defendants is utterly and irredeemably unconstitutional," ECF No. 15 at 2, fails. Plaintiff offers only the bare assertion, with no plausible supporting factual allegations, to claim that Defendants brought the paternity complaint against him in bad faith as part of a pattern of harassment. ECF No. 1 ¶ 4. To be sure, Plaintiff asserts that Enma Perez is "not legally domiciled" in Maryland and that MCOCSE failed to produce "written representations" made by Ms. Perez about Plaintiff's paternity status, ECF No. 1 ¶ 16, but these factual allegations are irrelevant to whether MCOCSE initiated the paternity action in bad faith, *see e.g.*, Md. Code Ann., Fam. Law §§ 5-1002, 5-1010, 5-1011. Further to the extent that Plaintiff challenges the constitutionality of § 5-1029(b) of the Maryland Family Law Code, which mandates that "on the motion of the Administration, a party to the proceeding, or on its own motion, the court shall order the mother, child, and alleged father to submit to blood or genetic tests to determine whether the alleged father can be excluded as being the father of the child," Plaintiff's challenge is now moot because he already submitted to a genetic test or not yet ripe because he has not alleged facts to transform his fear that his DNA will be misused, ECF No. 15 at 2, into a concrete, particularized, and imminent injury that is required for a plaintiff to maintain an action in federal court. Additionally, for the reasons described in more detail below, Plaintiff does not have a constitutional right to deny paternity.

For the foregoing reasons this Court will not interfere with the ongoing state court proceeding from which Plaintiff's Complaint arises.

## B. Immunity

Even if *Younger* abstention doctrine did not bar Plaintiff's Complaint from proceeding, the Defendants' Eleventh Amendment and/or absolute judicial immunity would. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not broadly waived its immunity to suit in federal court under the Eleventh Amendment. *See Gray v. Laws*, 51 F.3d 426, 431-32 (4th Cir. 1995) (noting that "it is well established that an unconsenting State is immune from suits brought in federal courts by her own citizens...." (internal citations omitted)). MCOCSE is a state agency, *see* Md. Code Ann., Hum. Servs. § 2-301, and the claims against it will be dismissed because it is immune from suit under the Eleventh Amendment.

Further, suits for damages against a public employee "in his official capacity" imposes liability on the public entity, and is also precluded under the Eleventh Amendment where the state has not consented to be sued in federal court. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (citing *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978) (internal quotation omitted)). Although the Complaint is silent as to whether the allegations are raised against individual Defendants in their official or personal capacities, or both, Plaintiff served the Defendants at their places of employment and the allegations revolve around actions taken in their official capacities. To the extent Mr. Rhoe's claims against the MCOCSE attorneys and

9

Circuit Court judges are made in their official capacities, these claims are tantamount to claims against the State of Maryland, are barred by the Eleventh Amendment, and must be dismissed.[4]

Additionally, this Court lacks jurisdiction over the Defendant Circuit Court and the Defendant judges because of absolute judicial immunity. "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 347 (1871). Judicial immunity applies to any action taken in a judge's judicial capacity. Thus, the only time judicial immunity does not apply is when the action was not taken in the judge's judicial capacity or the action, though judicial in nature, was taken in complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). A judge is acting in his or her judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Regarding the issue of jurisdiction, "no immunity is granted if there is clearly no jurisdiction over the subject matter . . . [and] the want of jurisdiction is known to the judge." *King v. Myers,* 973 F.2d 354, 357 (4th Cir.1992) (citations omitted) (alterations in original).

Plaintiff takes a leap of logic to conclude that because Ms. Perez is "not legally domiciled in the United States," the Defendants lacked jurisdiction. ECF No. 1 ¶ 16. Even assuming the truth of Plaintiff's factual allegation about Ms. Perez's legal status, as the Court must, that fact does not ultimately support Plaintiff's conclusory allegation that Defendants lack jurisdiction. Additionally, Plaintiff's argument that Defendants lack "jurisdiction because the Complaint

---

[4] Prosecutors are also absolutely immune from civil liability claims arising from this role in the judicial process, and this prosecutorial immunity extends to civil cases like child welfare suits. *Imbler v. Pachtman*, 429 U.S. 409, 422-23 (1976); *Ostrzenski v. Siegel*, 177 F.3d 245, 250-51 (4th Cir. 1999). Thus, for the reasons described by Defendants, ECF No. 12-1 at 14–16, prosecutorial immunity also bars Plaintiff's suit against the MCOCSE Defendants.

came to the Defendant Circuit Court through an illegal presentation of intervention" is neither alleged in the Complaint nor relevant given MCOCSE's right to serve as complainant. Md. Code Ann., Fam. Law § 5-1011. Reading Plaintiff's Complaint generously, it also alleges that Defendant Judge Quick lacked jurisdiction over the MCOCSE Defendant's contempt petition. ECF No. 1 ¶ 137. This is plainly incorrect: "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Dorsey v. State*, 295 Md. 217, 227 (1983) (quoting Ex *Parte Robinson*, 86 U.S. 505, 22 L.Ed. 205 (1873)). Similarly, based on a generous interpretation of Plaintiff's Complaint, it includes an allegation that Defendant Judge Dwyer lacked jurisdiction when she requested that the parties provided copies of their appellate briefs and allowed for a brief recess so that she could review Plaintiff's interlocutory appeals to determine how to rule on Plaintiff's motion to stay the trial court proceedings. ECF No. 1 ¶ 47. However, as alleged, Defendant Judge Dwyer was exercising jurisdiction over Plaintiff's motion to stay, not improperly exercising appellate jurisdiction to decide the outcome of Plaintiff's appeals. *Id.*

Thus, because all of Plaintiffs claims against the Judges involved their respective judicial acts for which they had jurisdiction, Mr. Rhoe's claims against the Judges are barred by absolute judicial immunity and must be dismissed.

### C.  Failure to State a Claim

Even assuming Plaintiff's Complaint did not face various jurisdictional bars, the Court would be compelled to dismiss it because it fails to state any claims upon which relief can be granted. A complaint cannot survive a motion to dismiss if it includes only "unadorned, the defendant-unlawfully-harmed me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[N]aked assertions devoid of further factual enhancement" do not suffice. *Id.* Although the Court must accept well-pleaded factual allegations in the Complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79.

Plaintiff repeatedly asserts the legal conclusion that Defendants violated his constitutional rights but fails to plead supporting factual allegations. *E.g.*, ECF No. 1 ¶¶ 1, 4, 5, 33–37, 46–47. For example, Plaintiff labels MCOCSE's contempt petition "frivolous and coercive" and alleges that it was filed "in retaliation for Plaintiff Rhoe's appeal and [to] further interfere with his Due Process of Law." ECF No. 1 ¶ 33. But this "defendant-unlawfully-harmed me accusation" is not supported with factual allegations. Additionally, where the Complaint does assert factual allegations, those allegations do not lead to the conclusion that Plaintiff's rights were violated. For example, as previously explained, Plaintiff alleges that Ms. Perez is not legally domiciled in the United States, but this factual allegation is not relevant to Plaintiff's constitutional claims.

Ultimately, Plaintiff does not have a constitutional right to deny paternity or to "terminate his duties of support under state law for a child that he has fathered, no matter how removed he may be emotionally from the child." *N.E. v. Hedges*, 391 F.3d 832, 836 (6th Cir. 2004) ("We cannot imagine that any federal court would agree with plaintiff's principle that the concept of "procreative privacy" should be stretched to include the constitutional right for a father . . . the right to deny paternity and deny the duty of financial support."). Because Plaintiff's Complaint hinges on this "novel legal theory" that has "no foundation, no chance of success," the Complaint fails to state a claim upon which relief may be granted.[5]

---

[5] Plaintiff also alleges violations of 8 U.S.C. § 1324 (Bringing in and Harboring Certain Aliens), 18 U.S.C. § 1962 (Prohibited Activities (Racketeering via Extortion)), and 18 U.S.C. § 1621 (Perjury) but private lawsuits cannot be

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. A separate Order shall issue.

Date: December 4, 2018

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
GEORGE J. HAZEL
United States District Judge

---

maintained under these federal criminal statutes and, in any event, Mr. Rhoe does not plead sufficient elements to establish any violation. *See* ECF No. 1 ¶¶ 3, 4, 5, 10, 13, 14, 16, 20, 26, 29, 34, 35, 37, 38, 39, 43, 47. Additionally, Plaintiff repeatedly alleges violations of the "Federal Rules of Civil Procedure" which do not apply in the Circuit Court and which provide no private cause of action. *See* ECF No. 1 ¶¶ 3, 4, 5, 10, 13, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 29, 33, 34, 35, 37, 38, 39. Moreover, the Fourth, Fifth, Sixth, Seventh, and Eighth Amendment are not applicable based on the facts Plaintiff alleges, and Plaintiff does not allege sufficient facts to state a claim for relief under the Fourteenth Amendment.